## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VICTOR BANDALA-MARTINEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 3:15-cv-00752-MJR** |
| | ) |
| **CORY FRY,** | ) |
| **N. BEBOUT,** | ) |
| **SGT. EOVALDI,** | ) |
| **DAVID DAVIS,** | ) |
| **C/O ELLETT, and** | ) |
| **UNKNOWN PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Victor Bandala-Martinez is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois, but was previously incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Martinez has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that a number of prison officials engaged in excessive force against him at several points on August 14, 2013, failed to protect him during those excessive force incidents, and failed to treat the injuries he sustained during those excessive force incidents. (*Id.* at 1-2.) Martinez seeks compensatory and punitive damages. (*Id.* at 16-17.)

This matter is now before the Court for a preliminary review of Martinez's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

As of August 14, 2013, Martinez was housed at the Menard Correctional Center in the North Two building. (Doc. 1 at 3-4.) At around 4:20 PM that day, Martinez exited his assigned cell for the prison cafeteria. (*Id.* at 4.) On his way to dinner, Corrections Officer Fry confronted Martinez and demanded to see his identification card. (*Id.*) While Martinez was attempting to fish out his card, Fry allegedly became "extremely aggressive" and called Martinez "fucking stupid," a "fucking moron," and a "dumb Mexican." (*Id.*) Martinez then says that a "physical altercation" occurred between the two of them, and Eovaldi, Bebout, and Davis arrived to assist Fry in handcuffing Martinez. (*Id.*) Once handcuffed, the officers forced Martinez to the ground and chained him so tightly that the chain "cut through his skin," causing "extreme and tormenting pain." (*Id.* at 5.) Once Fry, Eovaldi, Bebout, and Davis had Martinez secured on the ground in handcuffs, they punched, kicked, elbowed, kneed, and stomped their combat boots on his face, head, neck, chest, ribs, back and arms – purportedly without "any provocation." (*Id.*)

After allegedly attacking Martinez, Fry and other unknown corrections officers "violently" picked Martinez up by his handcuffs and chains. (*Id.*) Martinez was then dragged by Fry and the unknown officers down a hallway and thrown into a breakroom. (*Id.*) Once Martinez was in the breakroom, he was held up by Fry while Davis, Bebout, and Eovaldi took turns punching him in the face, eyes, mouth, nose, head, neck, stomach, ribs, and groin. (*Id.* at 5-7.) Eovaldi then held Martinez up so that Fry could punch Martinez in the same manner. (*Id.* at 7.) Other unknown corrections officers were present in the room and aided Fry, Davis, Bebout,

and Eovaldi in attacking Martinez. (*Id.*) During the attack, Martinez says that none of the officers involved tried to protect Martinez or summon medical assistance. (*Id.*)

After the attack in the breakroom, Martinez was dragged to a nearby holding cell by unspecified officers. (*Id.* at 8.) He was then called racist names and again "sadistically and violently beaten" by Fry, Davis, Bebout, and Eovaldi. (*Id.*) Martinez was then escorted to an Internal Affairs office at the prison by Eovaldi; on the way, Eovaldi allegedly punched Martinez in the face, causing him further injury. (*Id.* at 9.) When Martinez arrived at the Internal Affairs office, he was seen by Officer Ellett. (*Id.* at 8.) He begged Ellett to loosen the handcuffs and Ellett refused, laughing at Martinez and telling him to "fucking suffer asshole." (*Id.*) An unknown nurse then came to the Internal Affairs office, wiped the blood off of Martinez's face, and said "that's what you deserve, you deserve to get beat up and suffer." (*Id.*) Ellett and the nurse ignored Martinez's injuries and did not seek any treatment for him. (*Id.*)

After Martinez was done in the Internal Affairs office, he was returned to a holding cell in one of the prison's housing units and ordered into a stress position for several hours while he was handcuffed behind his back. (*Id.* at 9.) Sometime later that night, Martinez was transferred to Pontiac Correctional Center. (*Id.* at 10.) When he arrived at Pontiac, photographs of his injuries were taken and he received medical treatment. (*Id.*) Martinez says that he suffered busted lips, a swollen jaw, facial trauma, eye damage, loss of vision, nerve damage, scarring, a bloody nose, and bruising across numerous areas of his body due to the attacks. (*Id.*)

In the months that followed the attack, Martinez says that he exhausted his available remedies by filing grievances with prison officials. (*Id.* at 11.) Unsatisfied with the prison's response, Martinez filed a § 1983 complaint in this Court on July 13, 2015. (*Id.* at 1.)

**Discussion**

Martinez has split his complaint into three discrete counts and specified the parties he wishes to sue for each, so the Court will assume that those are the counts he wishes to pursue in this case. To facilitate the management of future proceedings, the parties and the Court will use the following designated counts in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Fry, Davis, Bebout, Eovaldi, and other Unknown Parties engaged in excessive force against Martinez, in violation of the Eighth Amendment.

> **COUNT 2:** Fry, Davis, Bebout, Eovaldi, and other Unknown Parties failed to protect Martinez from excessive force, in violation of the Eighth Amendment.

> **COUNT 3:** Fry, Davis, Bebout, Eovaldi, Ellett and other Unknown Parties failed to treat the injuries Martinez incurred during the instances of excessive force on August 14, 2013, in violation of the Eighth Amendment.

Martinez's complaint focuses on allegations of excessive force, so the Court will start there (**Count 1**). To put forth an excessive force claim, a prisoner must show that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). Critically, not "every malevolent touch by a prison guard gives rise to a federal cause of action" – an inmate who complains of a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, Martinez has alleged that Fry, Davis, Bebout, and Eovaldi attacked him on his way to the prison cafeteria; that Fry and other Unknown Party officers violently picked Martinez up by his handcuffs and chains and dragged him to a breakroom; that Fry, Davis, Bebout, Eovaldi, and other Unknown Party officers attacked him in the breakroom; that Fry, Davis, Bebout, and Eovaldi attacked him again in a cell; that Eovaldi punched him

while transferring him to an Internal Affairs office; and that Unknown Party officers forced him to remain in a stress position for hours after the assault while still handcuffed. These allegations are sufficient to allege arguable excessive force claims for purposes of screening, so **Count 1** will be allowed to proceed as to Fry, Davis, Bebout, Eovaldi, and the Unknown Party officers.

Martinez also claims that a number of prison officials failed to protect him during the attack (**Count 2**). "To state a claim premised on prison officials' failure to protect him from harm, [Martinez] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In this vein, the failure of officers to intervene in a beating can violate a prisoner's constitutional rights – if a prisoner "can show" that an "officer attacked him while another officer ignored a realistic opportunity to intervene, he can recover." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Martinez says that several officers "failed to intervene . . . while [he] was being . . . beaten by Defendants in turn." (Doc. 1 at 13.) Given his reference to "beatings," Martinez seems to be alleging that Fry, Davis, Bebout, and Eovaldi failed to protect him from each other while the four attacked him outside of the cafeteria; that Fry, Davis, Bebout, Eovaldi, and other Unknown Party officers failed to intervene while the group attacked him in the breakroom; and that Fry, Davis, Bebout, and Eovaldi failed to protect him from each other while the four attacked him again in a cell. Those allegations are sufficient to state arguable failure-to-protect claims for purposes of preliminary screening review. *See Miller*, 220 F.3d at 495; *see also Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Accordingly, **Count 2** may proceed as to Fry, Davis, Bebout, Eovaldi, and the Unknown Party corrections officers who were present during the beatings referenced in Martinez's complaint.

Martinez's final claim is that Fry, Davis, Bebout, Eovaldi, Ellett, an Unknown Party nurse, and Unknown Party corrections officers failed to provide him with medical care for the injuries he sustained during the attacks (**Count 3**).  To state a medical claim under the Eighth Amendment, a plaintiff must satisfy a two-part test:  he must first show that his condition "was objectively serious," and must then demonstrate that named defendants acted with deliberate indifference towards that condition.  *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

For screening purposes, Martinez has alleged the existence of a serious medical need.  An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Here, Martinez's facial trauma, hand injuries, jaw injuries, bruises, and other injuries – which allegedly required x-rays and treatment after his transfer out of Menard – qualify as serious for purposes of screening.  *See Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996) (cellmates' cuts, severe muscular pain, and eye and skin irritation from beating could qualify as a serious medical condition).

Martinez has also alleged deliberate indifference to his medical needs by the named defendants.  Construing his complaint liberally, he first suggests that he told Ellet and the Unknown Party nurse of the injuries stemming from his handcuffs and the pain from his other injuries and they did nothing.  An allegation that an official knew of a condition but failed to "provide[] any treatment" states an arguable claim.  *Montanez v. Feinerman*, 439 F. App'x 545,

549 (7th Cir. 2011).  Martinez goes on to claim that Fry, Davis, Bebout, Eovaldi, and the other Unknown Party officers caused his injuries by participating in his beatings, but then failed to get him medical care.  That, too, is sufficient to state an arguable claim of deliberate indifference.  *See Cooper*, 97 F.3d at 917 ("Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise . . . .").  As such, **Count 3** may proceed as to Fry, Davis, Bebout, Eovaldi, Ellet, the Unknown Party officers involved in the attacks on Martinez, and the Unknown Party nurse.

One closing note concerning the Unknown Party officers and nurse:  these parties must be identified with particularity before service of the complaint can occur on any of them.  Where a prisoner's complaint states specific allegations describing the conduct of unknown officers sufficient to raise a claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  In this case, guidelines for discovery aimed at identifying the Unknown Party defendants will be set by the magistrate judge, so that Martinez can identify those individuals.  Once these parties are identified, Martinez shall file a motion to substitute the named individuals with the Unknown Party designates.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **FRY**, **DAVIS**, **BEBOUT**, **EOVALDI**, and the **UNKNOWN PARTY** officers.

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 2** shall **PROCEED** against **FRY**, **DAVIS**, **BEBOUT**, **EOVALDI**, and the **UNKNOWN PARTY** officers.

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 3** shall **PROCEED** against **FRY**, **DAVIS**, **BEBOUT**, **EOVALDI**, **ELLET**, the **UNKNOWN PARTY** officers and the **UNKNOWN PARTY** nurse.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **FRY**, **DAVIS**, **BEBOUT**, **EOVALDI**, and **ELLET**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Party defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document

submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to Magistrate Judge Stephen C. Williams for consideration.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 11, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**