IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICTOR BANDALA-MARTINEZ, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NICHOLAS BEBOUT, )<br>DAVID DAVIS, )<br>RYNE ELLETT, )<br>FRANK EOVALDI, )<br>CORY FRY, and UNKNOWN )<br>CORRECTIONAL OFFICERS, )<br>)<br>Defendants. ) | Case No.   15-cv-0752-MJR-SCW |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**I.    INTRODUCTION**

In July 2015, Victor Bandala-Martinez (Plaintiff) filed a pro se complaint in this Court under 42 U.S.C. 1983 against five named correctional officials and several other unknown correctional officials.  The named Defendants are Nicholas Bebout, David Davis, Ryne Ellett, Frank Eovaldi, and Cory Fry.  Plaintiff alleges that Defendants Fry, Davis, Bebout, and Eovaldi used excessive force against him (Count 1) and failed to protect him from the use of excessive force (Count 2), and that the all of the Defendants failed to treat the injuries he received as a result of the excessive force (Count 3).

The case comes now before the Court on Defendants' motion for summary judgment on the basis of failure to exhaust administrative remedies, filed with supporting brief (Docs. 28 and 29).  Plaintiff filed a response (Doc. 33) opposing the

motion. As explained below, the Court **DENIES** Defendants' motion.

II.   **SUMMARY OF KEY ALLEGATIONS AND EVIDENCE**

Plaintiff filed his complaint on July 13, 2015, while confined at Lawrence Correctional Center, complaining of events that occurred while he was incarcerated at Menard Correctional Center. As narrowed by the Court's August 11, 2015 threshold review Order (Doc. 6), the complaint alleges the following. On August 14, 2013, Plaintiff was housed at Menard in the North Two building (Doc. 6, p. 2). At about 4:20 p.m., Plaintiff exited his cell for the cafeteria but along the way was confronted by Defendant Fry who demanded Plaintiff's identification badge (*Id*.). Plaintiff began to search for his badge, but Fry became aggressive and began hurling verbal insults at Plaintiff (*Id*.). A physical altercation resulted between the two. Defendants Eovaldi, Bebout, and Davis arrived to assist in handcuffing Plaintiff (*Id*.). He was handcuffed and chained so tightly that the chain cut into his skin (*Id*.). After Plaintiff was secured, Defendants proceeded to punch, kick, elbow, knee, and stomp on Plaintiff's face, head, neck, chest, ribs, back, and arms (*Id*.). After the attack ended, Plaintiff was picked up off the ground by Fry and other unknown officers and dragged down a hallway to a break room (*Id*.). Once in the break room, Plaintiff was held up by Fry while Davis, Bebout, and Eovaldi took turns punching Plaintiff (*Id*.). Eovaldi then held Plaintiff so that Fry could punch him (*Id*.). Other unknown officers were in the room and aided the Defendants. None of the individuals tried to protect Plaintiff from the assault (*Id*.).

Plaintiff was next taken to a holding cell where he was beaten again by Fry, Davis,

Bebout, and Eovaldi (*Id.* at p. 3). Plaintiff was then taken to Internal Affairs by Eovaldi who punched Plaintiff in the face along the way (*Id.*). At Internal Affairs, Plaintiff was seen by Ellett who refused to loosen his handcuffs or seek treatment for Plaintiff's injuries. None of the other Defendants ever sought to obtain medical treatment for Plaintiff at any time during the encounter (*Id.*). Later that night, Plaintiff was transferred to Pontiac Correctional Center where his injuries were photographed, and he received medical treatment (Doc. 6, p. 3). Plaintiff alleges that he suffered a busted lip, swollen jaw, facial trauma, eye damage (including loss of vision), nerve damage, scarring, blooding nose, and numerous bruises (*Id.*).

In response to Plaintiff's complaint, Defendants move for summary judgment on the ground that Plaintiff did not exhaust his administrative remedies. The record reveals that Plaintiff submitted a grievance directly to the Administrative Review Board ("ARB") dated August 27, 2013 (Doc. 29-1, p. 2). The grievance indicates that he was assaulted while on his way out of North 2 Gallery 5 to the chow hall by seven unknown correctional officers (Doc. 29-1, p. 2). The grievance was received by the ARB on September 3, 2013. It was returned to Plaintiff on February 26, 2014, for the reason that Plaintiff failed to provide the names of the officers who assaulted him (Doc. 29-1, p. 1).

In response to the returned grievance, Plaintiff submitted a letter to the ARB on March 19, 2014, identifying the correctional officers by their names and features (Doc. 1, p. 24-25). Plaintiff's letter indicates that one of the officers was correctional officer Fry. Plaintiff goes on to identify the sergeant, lieutenant, and other officers by their physical

descriptions (*Id.*). Plaintiff specifically indicated that the sergeant who participated in the assault might have been named Eovaldi (Doc. 1, p. 24). Defendants do not deny that Plaintiff sent the March 19, 2014 letter.

### III. APPLICABLE LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.***, 422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of showing --based on the pleadings, affidavits, and information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986),** *quoting* **FED R. CIV. P. 56(e)(2).** A fact is material if it is outcome determinative under applicable law. *Anderson***, 477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson***, 477 U.S. at 248.**

B.     **Exhaustion Under the PLRA**

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e.  The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a) (2013).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending.   See *Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).**  If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit.  See *Jones v. Bock,***549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.   See *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").**  "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).**  This includes the filing of "complaints and appeals in

---

[1]     Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.   See **Fed. R. Civ. P. 12(d).**

the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, **534 U.S. 516, 524 (2002).** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez,* **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).** The Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008).**

Where failure to exhaust has been raised as an affirmative defense (i.e.,

exhaustion is contested), the district court should follow this sequence (*id.*, **544 F.3d at 742)**:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Defendants raised this affirmative defense in their answer herein (Doc. 22, p. 15).

The PLRA's exhaustion requirement is dependent upon the procedures established by the state in which the prison is located. ***Jones*, 549 U.S. at 218.** Plaintiff was confined within the Illinois Department of Corrections (IDOC).

    C.    <u>**Exhaustion Under Illinois Law**</u>

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq.* The grievance procedures first require inmates to speak with their Counselor about the issue or problem. **20 Ill. Admin. Code 504.810(a).** If

the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. *Id.* The grievance must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB.

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director

shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance *directly* with the ARB. **20 Ill. Adm. Code 504.870**. Those circumstances include grievances addressing (1) placement in protective custody, (2) involuntary administration of psychotropic medication, (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently

resides, and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution.  *Id.*

IV.   ANALYSIS

Defendants argue that Plaintiff did not exhaust his administrative remedies, because his grievance was rejected on the ground that he failed to identify or describe the Defendants in his grievance.  The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." **20 Ill. Admin. Code 504.810(b).**  *See also Ambrose v. Godinez*, **510 Fed. Appx. 470, 472 (7th Cir. 2013);** *Jackson v. Shepherd*, **552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014).**

The United States Court of Appeals for the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, **655 F.3d 709, 722 (7th Cir. 2011).**  This is especially true in light of the fact that the IDOC's grievance forms do not inform inmates that they are to provide the name or description of the subject person, but instead merely require that an inmate provide a "brief summary" of the grieved issues.  *Id.*  When prison officials have been

afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies. *Kaba*, **458 F.3d at 684.**

In the case at bar, the Court finds that Plaintiff furnished enough information to put the ARB on notice to address his claims. While Plaintiff (on the grievance form) did not identify the correctional officers by name or physical description, he provided the ARB the date, location, and time of the attack, and he indicated that he was attacked by seven correctional officers then on duty. This information should have provided the ARB enough details to look into Plaintiff's allegations of an assault and the possible individuals involved given the time and location. Plaintiff also indicated that a sergeant and a lieutenant were involved in the beating, and it would have been easy for the ARB to determine what sergeant and lieutenant were working that shift in that cellhouse at that time. Thus, the Court concludes that there was enough information in Plaintiff's grievance for the ARB to investigate and address Plaintiff's claims.

Furthermore, even if Plaintiff's original grievance did not properly identify or describe the correctional officers, he filed an additional letter to the ARB (in response to the denial of the grievance) further describing the individuals. Defendants do not deny that Plaintiff sent this letter. They argue only that it is evidence that Plaintiff knew the identities at the time that he wrote the original grievance and could have included the information in that grievance. But there is nothing in the administrative code which prevents Plaintiff from remedying or resubmitting a grievance. In fact, the "Return of

Grievance or Correspondence" indicates that a grievance *can be resubmitted* if additional information is needed (Doc. 29-1, p. 3).

Although the additional information portion was not selected by the ARB (instead the ARB marked that no further redress or additional consideration was needed), the only reason the grievance was returned to Plaintiff was because he did not properly identify the officers, and Plaintiff subsequently sent the ARB a correspondence doing just that. There is no indication that the ARB responded to that correspondence, for instance by rejecting it as untimely, as not being on the proper form, or for some other procedural deficiency. Nor is there any indication that the correspondence, along with the grievance, was re-examined on the merits.

Thus, once Plaintiff submitted his additional correspondence and did not receive a response, the grievance process became unavailable to him as he had no further instruction from the ARB. ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).** *See also Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002).** On these facts, the Court finds that Plaintiff did all that he could to exhaust his administrative remedies.

V. CONCLUSION

Accordingly, the Court **DENIES** Defendants' motion for summary judgment (Doc. 28).

IT IS SO ORDERED.

DATED May 18, 2016.

                                          **s/ Michael J. Reagan**
                                          Michael J. Reagan
                                          United States District Judge